99346-7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

PREMIER DISTRIBUTING COMPANY,

    Plaintiff,

vs.

VITAL PHARMACEUTICALS, INC.

    Defendant.
_____/

CASE NO.

## **COMPLAINT**

Plaintiff PREMIER DISTRIBUTING COMPANY, by and through the undersigned counsel, hereby files this lawsuit against Defendant, VITAL PHARMACEUTICALS, INC., and further avers:

## THE PARTIES

1. Plaintiff PREMIER DISTRIBUTING COMPANY ("PREMIER') is a New Mexico corporation with its principal place of business at 4321 Yale Blvd NE, Albuquerque, NM 87107.  In operation since 1982, PREMIER has distributed non-alcoholic and alcoholic beverages for some of the most well-known and respected domestic and global brands (e.g., Anheuser-Busch).

2. Defendant VITAL PHARMACEUTICALS, INC. ("VPX") is a Florida corporation with its principal place of business at 1600 N Park Dr, Weston, FL 33326.  It is a manufacturer

CASE NO.

of sports nutrition and performance beverages. It has effectively rebranded itself as Bang Energy following the success of the Bang product line.[1]

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction pursuant to 18 U.S.C. § 1332 because this matter involves citizens of different states and the amount in controversy is in excess of $75,000.00.

4. This Court has personal jurisdiction over VPX because it is a Florida corporation with its principal place of business in Florida.

5. Venue is proper in the U.S. District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391 because the subject Distributor Agreement was entered into by VPX in Broward County, Florida and a substantial part of the events or omissions giving rise to PREMIER's claims occurred in this judicial district. Further, the Distributor Agreement provides that any legal action, suit, or proceeding arising out of, or in connection with the Agreement, shall be brought exclusive in the courts located in Broward County, Florida. Exhibit A at ¶ 8.2.

## GENERAL ALLEGATIONS

6. VPX was established in 1993 by its Chief Executive Officer and Chief Scientific Officer Jack Owoc. Prior to starting VPX he was a high school teacher.

7. Over the years, VPX has developed a number of sports energy drinks including Redline and Bang Energy. To its credit, with Bang Energy, VPX has found significant success.

---

[1] https://bangenergy.com/about/ (last visited March 3, 2021)

CASE NO.

8. VPX is different than other sports energy drink manufacturers. In its own words:

> I felt obligated to start my own supplement company and set the highest standards in manufacturing because I was tired of all the lies and deception that unscrupulous supplement companies were using to purposefully rip off consumers. **<u>I intended to hold myself and the company to a higher standard than any other company on the planet</u>**. In fact, I wanted to run Bang Energy like a pharmaceutical company and adhere closer to their higher standards. This is precisely why the acronym VPX actually stands for Vital Pharmaceuticals with the X appearing lower than VP similar to how it appears in RX. (emphasis supplied)

Jack Owoc, CEO, CSO. https://bangenergy.com/about/ (last visited March 3, 2021)

9. Bang is now available in all 50 states through various distributors. In several states, its distributor network is vast, such as California, which boasts a network of 15 direct store distributors as well as five in Texas and four in Georgia. Currently, its beverages can be found at many retailers, such as Quik Trip, 7-Eleven, Ralph's and Chevron outlets. Bang Energy products are also sold in 37 countries worldwide. https://bangenergy.com/about/ (last visited March 3, 2021)

10. PREMIER was one of those distributors until its relationship with VPX was wrongfully terminated and otherwise interfered with as set forth below.

## THE DISTRIBUTOR AGREEMENT

11. On or about January 28, 2019 VPX and PREMIER entered into a Distributor Agreement (the "Agreement"). The Agreement set forth the rights and obligations of the parties to one another.

12. Pursuant to the Agreement, VPX conferred PREMIER with the exclusive right to distribute all of its current energy drinks and ready-to-drink dietary supplement goods, including REDLINE (8 oz.) and BANG (16 oz.)(collectively the "Products") in the State of New Mexico. Ex. A. at 1.1, 1.2, 2.2.

CASE NO.

13. These exclusive rights would continue to exist in perpetuity unless and until the Agreement was cancelled or terminated in accordance with its terms. Id. at 1.2.

14. In exchange for being afforded these exclusive rights in perpetuity, PREMIER agreed to refrain from the sale of competitive energy drinks, protein-based RTDs, and calorie-reducing and fat burning products. Id. at 2.3.

15. In the event VPX were to decide to introduce <u>any</u> new non-alcoholic or alcoholic product in New Mexico, PREMIER would automatically be appointed the exclusive distributor within that Territory. Id. at 2.4.

16. VPX agreed to use commercially reasonable efforts to fill all orders placed by PREMIER on a timely basis and with sufficient quantities to meet PREMIER'S reasonable needs. Id. at 2.8(a).

17. VPX further agreed that it would conduct its business in strict accordance with the highest commercial standards. Id. at 2.8(d).

18. As noted above, the exclusive distribution rights conferred to PREMIER were intended to continue uninterrupted unless or until either party exercised its rights to terminate the Agreement as set forth therein.

19. PREMIER agreed to and did in fact distribute VPX's Products on an exclusive basis on or before July 1, 2019.

20. PREMIER fully and faithfully performed its obligations at all times and at no time did VPX ever advise PREMIER of a material failure on its part or that it was otherwise in breach or default.

CASE NO.

21. Pertinent to this dispute, the Agreement provided that either party wishing to terminate the Agreement without cause was required to provide the other with 60 days' written notice. Id. at 3.2.

22. As PREMIER had been distributing, and remained willing, ready and able to continue to distribute VPX's Products, VPX could not terminate the Agreement without cause unless it would "buy out" PREMIER's rights per the Agreement. Id. at. 3.3.

23. More particularly, VPX agreed, and was required, to pay PREMIER a Buyout Sum calculated by multiplying (a) the number of standard cases of VPX's Products sold by PREMIER in the 12-month period immediately preceding notice of VPX's exercise of its buyout right by (b) $4.00 per 12-count case of BANG sold, $8.00 per 24-count case of BANG sold, and $6.00 per 24-count case of REDLINE sold (the "Buyout Sum"). Id. at 3.3.  VPX was required to tender the Buyout Sum within two (2) months. Id.

24. Further, VPX agreed that in the event it breached or failed to perform or observe any of its material representations, warranties, covenants or obligations hereunder; that it failed to pay any bona fide sums due and owing to PREMIER within 30 days; that it engaged in fraudulent conduct in any of its dealings with PREMIER or the Products or deliberate action to harm PREMIER's goodwill or reputation; or that it made sales or supplied product in violation of PREMIER's exclusive rights, without cure, that PREMIER could terminate the Agreement for cause, which would, in turn, trigger PREMIER's right to be paid the Buyout Sum. Id. at 3.5(a)(ii), (iii), (iv), (v).

25. Finally, the Parties agreed that in the event of any action or proceeding arising out of the Agreement that the prevailing Party shall be awarded its reasonable attorneys' fees and costs, whether or not suit was initiated. Id. at 8.12.

**VPX's Purports to Unilaterally "Revise" the Agreement**

26. Unbeknownst to PREMIER, in March of 2020, VPX entered into a new distribution agreement with Pepsi including the state of New Mexico for its crown jewel: the BANG products. This constituted a clear and direct violation by VPX of its rights and obligations under the Distributor Agreement.

27. Then, on or about April 27, 2020, VPX send PREMIER a "Dear Distributor Letter" authored by its Executive Vice President of Sales, Gene Bukovi. (the "DDL"). This letter stated, inter alia, that thirty (30) days following receipt of the letter, or such longer time as may be required, the Agreement would be "revised." More particularly, VPX would be "exercis[ing] its buyout right with respect to the BANG products" only. VPX calculated that PREMIER was due and owed $1,315,676.00 as this "Buyout Amount." Exhibit B. However, VPX did not offer to pay out this (partial) Buyout Amount as called for under the Agreement. Rather, VPX directed PREMIER to sign a Release in its [VPX's favor], then VPX would allow PREMIER to continue to distribute the REDLINE products. Then, VPX would provide PREMIER with a credit memorandum in the amount of the Buyout Amount against future REDLINE orders.

28. The next day, April 28, 2020 VPX announced it had entered into an "exclusive alliance" with Pepsi for the North Americas.

CASE NO.

29. Thereafter, on May 13, 2020, PREMIER was contacted by a Pepsi General Manager in order to "touch base on Bang Energy" and discuss a "transition timeline."

30. VPX's attempted exercise of a new, BANG-only buyout was rejected. In response, on May 14, 2020, Mr. Bukovi on behalf of VPX offered to pay the "buy out of Bang" as set forth in the DDL via a cash wire transfer as opposed to a credit memorandum. Exhibit C. However, this offer was still contingent upon PREMIER continuing its relationship for Redline products (only). Id.

31. This, too, was rejected. On May 18, 2020, PREMIER wrote VPX, reminding VPX of PREMIER's exclusive distribution rights and the fact that the Distribution Agreement did not allow VPX to unilaterally buy-out only one line of the Products. Exhibit D. PREMIER further advised VPX that it remained ready, willing and able to continue to act as VPX's exclusive distributor of the Products in New Mexico unless and until it obtained a proper termination notice as contemplated by the Distribution Agreement which would, in turn, trigger VPX's obligation to tender a full Buyout Sum per Section 3.3. Id. Further, PREMIER reminded VPX that allowing another distributor to distribute the BANG Products in New Mexico would constitute a breach of Section 1.2 of the Distribution Agreement. Id.

32. VPX's response was telling. It did not – because it could not – dispute the position set forth in PREMIER's May 18th correspondence. Instead, VPX advised that it would like to "work towards a resolution of the issues raised in your letter" and, in turn, referred the matter to its outside counsel. Exhibit E.

CASE NO.

33. As the lawyers continued to discuss these matters, VPX moved forward with its improper "transition" of the Bang Products to Pepsi.

34. For example, on August 12, 2020, PREMIER learned that Pepsi had delivered Bang to an Allsup's store in Gallup, New Mexico. VPX was immediately advised this constituted a clear breach of the Distribution Agreement and was further directed to cease and desist from all such activity. Exhibit F.

35. VPX's wrongful conduct continued.

36. Pepsi ramped up its distribution of Bang Products in New Mexico.

37. On September 18, 2020, PREMIER's outside counsel advised her counterpart for VPX that certain retailers had advised that Pepsi was planning to begin distribution in New Mexico starting Monday, September 20, 2020, which would constitute a clear breach of the Agreement.[2]

38. Undeterred, VPX moved forward with the distribution of product in contravention of PREMIER's rights. By no later than September 21, 2020, Bang Products were broadly being distributed by Pepsi in New Mexico. PREMIER, yet again, advised VPX that these actions constituted a breach of PREMIER's exclusive distribution rights and directed VPX to cease providing Bang Products to Pepsi. Exhibit G.

39. Around that same time, VPX started rejecting orders placed by PREMIER for Bang Products.

---

[2] Other portions of this communication concerned settlement discussions; thus, it is not attached to this Complaint.

CASE NO.

40. Also, PREMIER started to receive communications from a number of customers expressing confusion and consternation with the distribution and supply of Bang.

41. Then, on September 30, 2020, five (5) months after this saga began, VPX sent a generic letter to all retailers advising that VPX had appointed Pepsi Beverage North America as its authorized distributor in the State of New Mexico to market and sell the BANG portfolio. Exhibit H.

42. PREMIER continued to suffer problems with its customers as a result of VPX's wrongful conduct, a situation which VPX only made worse through its dissemination of false and misleading information:

> **From:** Joey Nickell <Joey.Nickell@bangenergy.com>
> **Sent:** Wednesday, October 7, 2020 12:20 PM
> **To:** Smith, Stephanie L. (Speedway) <ssmith7@speedway.com>
> **Cc:** Smith, Brittany A <BASmith@Speedway.com>; Feltman, Steven J. <Steven.Feltman@PremierDistributing.com>; Archibeque, Anita R <ARArchibeque@Speedway.com>
> **Subject:** RE: [EXTERNAL] Re: Bang in NM
>
> Team,
>
>     Here is the official statement from VPX/Bang Leadership and Legal.
>     NM is Pepsi's. Premier passed their timeframe for termination agreement and Pepsi now is now Bang's designated distributor.
>
>     Please forward any communication's from Premier to me directly and I will forward to VPX legal. This is not Speedway's responsibility.
>
> Best Regards,
>
> **Joseph Nickell**
> **National Director of Enterprise Accounts**
> Joey.Nickell@bangenergy.com
>
> **VPX | REDLINE | BANG**
> 1600 N. Park Drive Weston, FL 33326
> (954)703-9939
>
> Bang-Energy.com
> **Potent Brain and Body Fuel™**

43. PREMIER had, and continues to have, no idea what VPX was referring to when it advised PREMIER's customer, Speedway, that PREMIER had "passed their timeframe

CASE NO.

for termination agreement." To the extent that statement can be understood, it is unquestionably false.

44. VPX continues to play games with the Bang distribution rights, giving Pepsi notice on October 23, 2020, that it would be terminating that relationship with the truculent missive "PepsiCo, you're fired."

45. Since that time, VPX has become embroiled in arbitration and litigation with Pepsi in relation to *that* relationship. *See Vital Pharmaceuticals, Inc. v. Pepsico, Inc.,* case no. 0:20-cv-62415-RAR (S.D. Fla.).

46. In addition, PREMIER has recently learned that VPX will be introducing a new alcoholic Bang spin-off, MIXX Hard Seltzer. Exhibit I.

47. VPX affiliate Quash Seltzer, LLC ("Quash") has been working to develop a distribution network for MIXX since December of 2020.

48. True to form, the distribution of MIXX has engendered further litigation with Pepsi. *See Quash Seltzer, LLC v. Pepsico, Inc.,* case no. 0:21-cv-60191-RAR (S.D. Fla.)

49. Pertinent to this action, PREMIER has not been appointed the exclusive distributor for MIXX on the same terms and conditions as the other Products. Ex. A at 2.4.

50. As a result of VPX's wrongful, and continued, conduct, VPX has frustrated PREMIER's ability to perform under the Distribution Agreement.

51. PREMIER has been, and continues to be, damaged as a result of VPX's conduct as outlined above.

52. PREMIER has satisfied all conditions precedent to iniating this lawsuit.

CASE NO.

53. PREMIER has retained the undersigned firm and agreed to compensate it for its time in connection with this lawsuit.

## COUNT I:  BREACH OF CONTRACT

54. PREMIER adopts and incorporates by referenced ¶¶ 1 – 53 as if set forth herein.

55. The Distribution Agreement was and remains a valid and enforceable contract supported by sufficient lawful consideration.

56. PREMIER has fully and faithfully performed its obligations under the Distribution Agreement at all pertinent times.

57. At no time has VPX contended, nor could it, that PREMIER was in breach of any of its duties or requirements under the Distribution Agreement.

58. By contrast, VPX has materially breached the Distribution Agreement by and through its:

   a. Providing a third party (Pepsi) with the right to engage in the wholesale distribution of the Products in New Mexico in contravention of Section 1.2;

   b. Failure to automatically provide PREMIER with new non-alcoholic and/or alcoholic products for exclusive distribution in New Mexico in contravention of Section 2.4;

   c. Failed to use commercially reasonable efforts to fill all orders placed by PREMIER on a timely basis and with sufficient quantities to meet PREMIER's reasonable needs, including the express rejection of orders, in contravention of Section 2.8(a);

   d. Failed to provide PREMIER with a proper termination notice providing 60 days' written notice in contravention of Section 3.2;

CASE NO.

    e. Failed to timely pay PREMIER the Buyout Sum in contravention of Section 3.3;

    f. Failed to perform or observe its material representations, warranties, covenants and/or obligations in contravention of Section 3.5(a)(ii);

    g. Failed to pay all bona fide sums due and owing to PREMIER within 30 days in contravention of Section 3.5(a)(iii);

    h. Engaged in deliberate action to harm PREMIER's goodwill and reputation with its customers in contravention of Section 3.5(a)(iv); and

    i. Sold and/or supplied the Products in violation of Section 1.2 after written demand by PREMIER to cease and desist from doing so in contravention of Section 3.5(a)(v).

59. VPX's breaches outlined above have been the legal cause of damages to PREMIER including in the amounts of:

    a. The Buyout Sum acknowledged by VPX to be no less than $1,315,676.00[3];

    b. PREMIER's actual future lost profits and the fair market value of its loss of VPX's business (alleged in the alternative to (a), above);

    c. All bona fide sums due and owing to PREMIER including the Laid-in Cost of all unsold Products in PREMIER's inventory, Billbacks, promotional allowances, discount allowances, depletion allowances and similar charges for all activity up to the date of termination per Section 3.8;

---

[3] PREMIER did not and does not agree with VPX's calculation of its Buyout Sum obligations, including where that figure was calculated for the Bang Product only. This figure is included as this sum constitutes a party admission by VPX that it has owed PREMIER *at least* this amount since April 27, 2020.

CASE NO.

   d. Lost profits due to VPX's failure to automatically provide PREMIER with new non-alcoholic and/or alcoholic products for exclusive distribution;

   e. Harm to PREMIER's goodwill and reputation;

   f. PREMIER's lost profits for foregoing the sale of other energy drinks, protein-based RTDs and calorie-reducing and fat burning products, as provided for in Section 2.3, for the time period that VPX was in breach of the Distribution Agreement and PREMIER was ready, willing and able to perform its duties and requirements under the Distribution Agreement;

   g. Pre-judgment interest; and

   h. Costs.

60. Additionally, PREMIER is entitled to an award of all of its attorneys' fees incurred including all fees incurred prior to the institution of suit, as well as all fees incurred in connection with the preparation, filing and prosecution of this lawsuit as provided for in Section 8.12.

WHEREFORE, Plaintiff PREMIER DISTRIBUTING COMPANY respectfully requests this Honorable Court enter Judgment against Defendant VITAL PHARMACEUTICALS, INC. and award it damages including (a) the Buyout Sum acknowledged by VPX to be no less than $1,315,676.00; (b) PREMIER's actual future lost profits and the fair market value of its loss of VPX's business (alleged in the alternative to (a), above); (c) All bona fide sums due and owing to PREMIER including the Laid-in Cost of all unsold Products in PREMIER's inventory, Billbacks, promotional allowances, discount allowances, depletion allowances and similar charges for all activity up to the date of termination per Section 3.8; (d) Lost profits due to

CASE NO.

VPX's failure to automatically provide PREMIER with new non-alcoholic and/or alcoholic products for exclusive distribution; (e) Harm to PREMIER's goodwill and reputation; (f) PREMIER's lost profits for foregoing the sale of other energy drinks, protein-based RTDs and calorie-reducing and fat burning products, as provided for in Section 2.3, for the time period that VPX was in breach of the Distribution Agreement and PREMIER was ready, willing and able to perform its duties and requirements under the Distribution Agreement; (g) Pre-judgment interest; (h) Costs; and (i) Attorneys' Fees, and for such other and reasonable relief as this Honorable Court deems just and proper.

Dated:  3/3/2021

Respectfully submitted,

 _/s/ Jordan S. Cohen_____
Jordan S. Cohen, Esquire (551872)
JCohen@wickersmith.com
WICKER SMITH O'HARA
  McCOY & FORD, P.A.
515 E. Las Olas Blvd.
Suite 1400
Fort Lauderdale, FL  33301
Telephone:     (954) 847-4800
Facsimile:     (954) 760-9353
Attorneys for Premier Distributing Company

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on March 3rd, 2021, and the foregoing document is being served this day on all counsel or parties of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

 _/s/ Jordan S. Cohen_____
Jordan S. Cohen, Esquire